UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD DAVID HARCLEROAD, JR.,

       Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of
 Social Security,

       Defendant.
_____

**DECISION
and
ORDER**

**18-CV-559F**
(**consent**)

APPEARANCES:   LAW OFFICES OF KENNETH R. HILLER, PLLC
           Attorneys for Plaintiff
           KENNETH R. HILLER, of Counsel
           6000 North Bailey Avenue, Suite 1A
           Amherst, New York 14226

           JAMES P. KENNEDY, JR.
           UNITED STATES ATTORNEY
           Attorney for Defendant
           Federal Centre
           138 Delaware Avenue
           Buffalo, New York 14202
             and
           GRAHAM MORRISON
           Special Assistant United States Attorney, of Counsel
           Social Security Administration
           Office of General Counsel
           26 Federal Plaza – Room 3904
           New York, New York 10278
             and
           ANNE M. ZIEGLER, and
           FRANCIS D. TANKARD
           Special Assistant United States Attorneys, of Counsel
           Social Security Administration
           Office of General Counsel
           601 E. 12th Street, Room 965
           Kansas City, Missouri 64106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On July 9, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 21, 2018 (Dkt. 9), and by Defendant on February 19, 2019 (Dkt. 12).

## BACKGROUND

Plaintiff Richard David Harcleroad, Jr. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on March 17, 2015, for Social Security Disability Insurance ("SSDI"), and Supplemental Security Income ("SSI") (together, "disability benefits"). Plaintiff alleges he became disabled on April 24, 2013, based on fibromyalgia, neurogenic bladder, major depression, panic disorder, and hyperthyroidism. AR[2] at 236, 247. Plaintiff's applications initially were denied on July 8, 2015, AR at 126-34, and at Plaintiff's timely request, on November 16, 2016, a hearing was held in Rochester, New York, via video conference before administrative law judge Elizabeth Ebner ("the ALJ), located in the National Hearing Center in Falls Church, Virginia, but the hearing was adjourned to permit Plaintiff to obtain legal representation. AR at 67-77. On March 9, 2017, Plaintiff again appeared in Rochester, New York for a hearing held via teleconference before the ALJ in Falls Church, Virginia. AR at 78-99.

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 24, 2018 (Dkt. 8).

Appearing and testifying at the hearing were Plaintiff, Plaintiff's attorney Kimberly Irving, Esq., and vocational expert ("VE") Thomas Heiman.

On April 28, 2017, the ALJ issued a decision denying Plaintiff's claim, AR at 12-41 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council. AR at 205-07. On March 22, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-6. On May 16, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On December 21, 2018, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum"). On February 19, 2019, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum"). Filed on March 12, 2019, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Richard David Harcleroad, Jr. ("Plaintiff" or "Harcleroad"), born July 5, 1970, was 42 years old as of April 24, 2013, his alleged disability onset date ("DOD"), and 46 years old as of April 28, 2017, the date of the ALJ's decision. AR at 36, 37, 74, 81, 235. Plaintiff is single, has no children, and lives with his dog, a pug, in an upper apartment in Warsaw, New York. AR at 81-82. Although Plaintiff does not have a vehicle, he has a driver's license and drives his father's vehicle every other day, including to his father's house, grocery stores, and to doctor's appointments in Rochester, New York. AR at 82-83, 261. After graduating high school, where he attended regular classes, Plaintiff attended a vocational school, earning an associate's degree as a Licensed Practical Nurse ("LPN"). AR at 83, 248. Plaintiff then worked as an LPN at various nursing homes until April 24, 2013, when Plaintiff began experiencing urinary retention, requiring Plaintiff to use a catheter which caused pain. AR at 84-85, 88-89. The urinary retention problem resolved after four months, but Plaintiff then developed fibromyalgia, chronic fatigue syndrome, depression, and anxiety. AR at 85-87. Plaintiff has a history of alcohol abuse, but has remained sober since attending a 12-step program in 2012. AR at 83-84. Plaintiff denies any other substance abuse. AR at 84. Plaintiff's daily activities included caring for his dog including feeding, bathing and walking the dog outside several times a day, showering, visiting with his father, watching television, reading, attending appointments, visiting relatives, and socializing with friends, AR at 87-89, 93, 259, 262-63, preparing meals several times a week by grilling or baking, AR at 260, and some cleaning and laundry with help from his father.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

*Id.* Throughout the time relevant to this matter, Plaintiff's primary care physician was Robert Thompson, M.D. ("Dr. Thompson"), who provided Plaintiff with medication for insomnia, bladder control, anxiety, depression, nerve pain, hyperthyroidism, fibromyalgia pain, and gastrointestinal upset. AR at 249.

## **DISCUSSION**

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirements for SSDI thought December 31, 2018, AR at 17, has not engaged in substantial gainful activity since April 24, 2013, his alleged disability onset date, AR at 17, and suffers from the severe impairments of fibromyalgia, obesity, neurogenic bladder with a history of prostatitis (swelling and inflammation of the prostate gland), and hypogonadism (testosterone deficiency), thyroid disorder, history of hidradenitis (obstructed hair

follicles occurring in armpit and groin), and subcutaneous cysts with residual scar tissue status-post excision, cervical and lumbar degenerative disc disease, asthma, and history of polysubstance abuse.  *Id.*  The ALJ further found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, *id.* at 18-21, and that Plaintiff retains the RFC to perform light work, with limitations including lifting, carrying, pushing, and pulling up to twenty pounds occasionally and ten pounds frequently, sitting for up to six hours and standing or walking for up to six hours in an eight-hour day, with the ability to alternate between sitting and standing as often as every thirty minutes without going off task or leaving his work station, frequently handle, finger, operate hand controls, and reach in all directions with his bilateral upper extremities, occasionally balance, kneel, crawl, and climb ramps and stairs, frequently stoop and crouch, but never climb ladders, ropes, or scaffolds.  *Id.*  Plaintiff can have no exposure to unprotected heights and dangerous moving parts, tolerate occasional exposure to extremes of heat and cold, vibrations, and dusts, odors, fumes, and pulmonary irritants, can perform simple routine tasks involving frequent interaction with supervisors and coworkers and occasional interaction with the public, can tolerate occasional changes in the work settings, and was expected to be off-task up to five percent of an eight-hour day in addition to normal breaks.  AR at 21-35.  The ALJ further found that Plaintiff could not perform any PRW, AR at 35, and in light of Plaintiff's age, education, work experience and RFC, application of the Medical-Vocational Rules supports a determination that Plaintiff is not disabled regardless of whether Plaintiff has transferable job skills, with jobs existing in significant numbers in the national economy that Plaintiff can perform, including cleaner/housekeeper,

photocopying machine operator, and office helper, AR at 36-37, such that Plaintiff is not disabled as defined under the Act. *Id.* at 37.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues the ALJ's determination of Plaintiff's RFC at the fourth step is not supported by substantial evidence in the record because the ALJ violated the treating physician rule by failing to give substantial weight to the opinions of Dr. Thompson, Plaintiff's Memorandum at 19-26, and improperly substituted her own lay opinion when assessing Plaintiff's RFC. *Id.* at 26-29. Defendant argues the ALJ properly considered Dr. Thompson's opinions and provided good reasons for not granting such opinions controlling weight, Defendant's Memorandum at 17-22, and despite rejecting Dr. Thompson's opinions, substantial evidence in the record supports the ALJ's assessment of Plaintiff's RFC such that the ALJ did not substitute her lay opinion for medical evidence. *Id.* at 23-24. In reply, Plaintiff maintains Defendant, rather than rejecting Dr. Thompson's opinions, should have requested from Dr. Thompson a function-by-function assessment of Plaintiff to close any gap in such opinions, Plaintiff's Reply at 1-3, and the ALJ's failure to do so establishes the RFC determination is the product of the ALJ's lay judgment, requiring remand. *Id.* at 3-4. There is no merit to Plaintiff's arguments.

1. **Treating Physician Rule**

It is undisputed that at all times relevant to this matter, Dr. Thompson has been Plaintiff's treating primary care physician. On three occasions, Dr. Thompson opined Plaintiff is unable to work. In particular, in treatment notes dated October 18, 2013, Dr. Thompson stated that Plaintiff was not then able to work based on pain, decreased

9

concentration, limited mobility, need to change position including lying down at times, and an inability to squat, bend, stoop, balance, and lift. AR at 14-15. In a letter to Plaintiff's then attorney dated November 30, 2016, Dr. Thompson wrote that Plaintiff has been out of work since 2013, initially because of a urinary retention problem, which was then under control with medication, but that Plaintiff then developed symptoms of gastroparesis, fibromyalgia, depression, anxiety, and fatigue, which conditions Plaintiff managed with several medications. AR at 495. Dr. Thompson concluded that Plaintiff "continues to be unable to work at this time." *Id*. In another letter to Plaintiff's then attorney Irving dated December 19, 2016, Dr. Thompson expands on his statement from the previous month, adding that after developing a urinary retention problem in April 2013, which was first addressed with use of a catheter and is now managed with medication, Plaintiff developed abdominal pain with bladder spasm pain, and was diagnosed with gastroparesis. AR at 499. According to Dr. Thompson, Plaintiff's physical conditions exacerbated his chronic depression, requiring therapy, and worsened Plaintiff's fibromyalgia symptoms requiring multiple medications for pain. *Id*. Dr. Thompson continues that Plaintiff "has developed chronic neck pain diagnosed as cervical spondylosis with myelopathy," and "has reported symptoms of memory impairment and has had sedation with use of medication to control his symptoms." *Id*. Dr. Thompson concluded that "[o]ver these years [Plaintiff] has been evaluated and treated by Psychiatry, Urology, Gastroenterology, and Neurology. [Plaintiff] currently takes SOMA, clonazepam, Lyrica, methylphenidate, extended-release morphine, and pantoprazole for his conditions affecting his ability to work." *Id*.

Plaintiff argues the ALJ violated the treating physician rule by failing to provide good reasons for rejecting the opinions of Dr. Thompson, Plaintiff's Memorandum at 19-21, asserting that although some of the impairments diagnosed by Dr. Thompson were subsequently ruled out based on evaluations by specialists, the symptoms Plaintiff experienced leading to the incorrect diagnoses were nonetheless consistent with Dr. Thompson's examination findings, *id.* at 21-22, which findings are not undermined by the fact that Dr. Thompson is not a specialist in the relevant areas, *id.* at 22, given the findings are supported by Plaintiff's medical record, *id.* at 22-24, and insofar as the ALJ perceived any inconsistencies in the opinions of Plaintiff's treating physicians, the ALJ was required to seek more information to close such gap. *Id.* at 24-26. In opposition, Defendant counters the ALJ articulated sufficient reasons for giving little weight to Dr. Thompson's opinions, including that several of Plaintiff's asserted impairments were not medically determinable, Defendant's Memorandum at 18, many of Plaintiff's subjective complaints are without corroborating clinical findings, *id.* at 18-19, yet Dr. Thompson prescribed controlled substances for such subjective complaints, *id.* at 19-20, Dr. Thompson is not a specialist, *id.* at 20-21, and several of Dr. Thompson's findings are conclusory and unaccompanied by a function-by-function assessment. *Id.* at 21-22. In reply, Plaintiff maintains Defendant's assertion that the ALJ's rejection of Dr. Thompson's opinion as conclusory and unaccompanied by a function-by-function assessment, the ALJ was required to recontact Dr. Thompson to obtain such assessment. Plaintiff's Reply at 1-3. Plaintiff's argument on this point is without merit.

Generally, the opinion of a treating physician is entitled to significant weight, but is not outcome determinative and only entitled to significant weight when "'well-

11

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.'" *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed.Appx. 34, 35 (2d Cir. Dec. 1, 2017) (*quoting Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), and 20 C.F.R. § 404.1527(d)(2)). Where, however, the ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so. *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The record establishes the ALJ sufficiently explained her reasons for failing to give Dr. Thompson's opinions controlling weight, including that several of the impairments diagnosed by Dr. Thompson, including gastroparesis (condition affecting the normal spontaneous movement of the stomach muscles, preventing the stomach from emptying itself of food in a normal fashion, resulting in heartburn, nausea, and vomiting), and cervical spondylosis with myelopathy (neck condition where degenerative changes of the discs and facet joints compress the spinal cord resulting in impaired function), were later ruled out with further diagnostic testing and evaluation by specialists. AR at 33 (citing AR at 495-500). Specifically, Dr. Thompson's gastroparesis diagnoses was provisional and, based on the results of blood chemistry tests, an ultrasound and an August 29, 2014 endoscopy, this diagnosis was ruled out on September 16, 2014 by Robert N. Kornfield, M.D. ("Dr. Kornfield"), a gastroenterologist, who instead diagnosed Plaintiff with "mild gastritis" (inflammation of stomach lining usually caused by infection). AR at 320-24. Similarly, diagnostic tests of Plaintiff's cervical spine, including electromyogram and nerve conduction studies ("EMG/NCS") on April 6, 2015, were normal, AR at 390, and magnetic resonance imaging ("MRI") on May 7, 2015, showed no impingement on the cervical cord, nor any

significant encroachment on the spinal canal at any level, but did show some central disc protrusion and broad-based disc bulge in the cervical spine. AR at 490. The ALJ also correctly observed that Plaintiff's urinary retention problem resolved after several months' use of a catheter and has "since been described as controlled on medication," AR at 31, which is consistent with Dr. Thompson's opinions of November 30, 2016, AR at 495, and December 19, 2016, AR at 499. The ALJ thus properly discounted those portions of Dr. Thompson's opinions concerning conditions that were not properly diagnosed.

Substantial evidence in the record also supports the ALJ's determination, AR at 32, 34, that many of Plaintiff's subjective complaints are without corroborating clinical findings, including Dr. Thompson's report of Plaintiff's "memory impairment," AR at 343, which not only was not corroborated on any mental status or neurological examination, but such examinations showed Plaintiff with intact memory and cognitive functioning. *See*, *e.g.*, AR at 431-35 (May 28, 2015 consultative psychiatric evaluation by Adam Brownfeld, Ph.D. ("Dr. Brownfeld"), finding Plaintiff with intact attention and concentration, and recent and remote memory skills, with cognitive functioning in the average range and general fund of information appropriate to experience). Likewise, despite Plaintiff's complaints of severe abdominal pain, as Dr. Thompson reported, AR at 499, the diagnostic testing failed to establish such pains were anything other than "mild gastritis" and were otherwise within normal limits. AR at 324-24. Nor does any medical evidence support Plaintiff's self-reported inability to balance, AR at 343, but, rather, as the ALJ found, AR at 32, an April 6, 2015 evaluation by Andrew C. Hilburger, M.D. ("Dr. Hilburger"), a neurologist, showed Plaintiff with intact coordination and

balance. AR at 385-88. The ALJ thus properly discounted Dr. Thompson's opinions insofar as they are inconsistent with other medical opinions in the record. *See Carney v. Astrue*, 380 Fed.Appx. 50, 52 (2d Cir. June 7, 2010) (holding an ALJ need not give controlling weight to a treating physician's disability opinion where other medical opinions in the record are "at odds" with such opinion).

The ALJ further noted that despite the absence of any medical evidence supporting Plaintiff's assertions of worsening pain, Dr. Thompson continually prescribed increasing doses of controlled substances such as morphine, and suggested Plaintiff pursue alternative pain management such as acupuncture, but no evidence in the record indicates Plaintiff did so. AR at 27, 32, 34 (citing AR at 466-67). In contrast, Plaintiff reported to his therapist that he controlled his pain with morphine. AR at 30 (citing September 26, 2015 Therapy Note, AR at 540). The ALJ also properly noted that Dr. Thompson is not a specialist with regard to most of Plaintiff's complaints and, as such, simply accepted Plaintiff's subjective complaints asserted with regard to those impairments outside of Dr. Thompson's treatment, including complaints related to depression, anxiety, and substance abuse, AR at 24, and memory impairment. AR at 34. Significantly, the ALJ is permitted to consider whether a medical opinion relates to the medical provider's area of specialty. 20 C.F.R. §§ 404.1527(c)(5), and 416.927(c)(5). Plaintiff does not dispute that Dr. Thompson is not a specialist in the fields of gastroenterology, orthopedics, neurology, psychiatry, or pain management. The ALJ's discounting of Plaintiff's subjective complaints, as reported by Dr. Thompson, thus is supported by substantial evidence in the record.

Nor did the ALJ err with regard to the determination that several of Dr. Thompson's findings are conclusory and unaccompanied by a function-by-function assessment; rather, a plain reading of Dr. Thompson's medical opinions establishes they are, as the ALJ asserts, conclusory and unaccompanied by any function-by-function assessment. *See* AR at 343, 495, 499. Requiring the ALJ to accept such conclusory opinions would be contrary to the well-settled premise that the ultimate determination that a claimant is disabled is reserved for the Commissioner. *Wright v. Berryhill*, 687 Fed.Appx. 45, 48 (2d Cir. Apr. 14, 2017) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Substantial evidence in the record thus supports the ALJ's reasons for discounting of Dr. Thompson's medical opinions which was not in violation of the treating physician rule.

**2.     Substitution of Lay Opinion**

Plaintiff argues that the ALJ's rejection of Dr. Thompson's opinions for lack of any function-by-function assessment establishes there was a gap in the medical record, particularly with regard to the RFC determination, particularly with regard to Plaintiff's ability to sit and stand for up to six hours in an eight-hour day provided Plaintiff can sit and stand at will, such that the ALJ was required contact Dr. Thompson for additional evidence to fill the gap and that by failing to do so, the ALJ substituted her own lay opinion for that of Dr. Thompson. Plaintiff's Memorandum at 26-29. In opposition, Defendant argues there was no "gap" in the record to be filled. Defendant's Memorandum at 23-24. In reply, Plaintiff maintains the record is devoid of any evidence

establishing Plaintiff retains the RFC as determined by the ALJ.  Plaintiff's Reply at 3-4.  Plaintiff's argument is without merit.

In particular, no gap exists where the record, as a whole, supports the ALJ's determination of the Plaintiff's RFC.  *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. Apr. 2, 2013) (remand not required to further develop the record where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity").  As relevant here, substantial evidence in the record supports that ALJ's assessment of Plaintiff's RFC, especially the medical findings of Harbinder Toor, M.D. ("Dr. Toor"), who performed a consultative examination of Plaintiff on May 28, 2015, in connection with Plaintiff's disability benefits application.  AR at 424-29.  Based on the consultative examination of Plaintiff, Dr. Toor assessed Plaintiff with a moderate limitation to standing, walking, and sitting, moderate to marked limitation to bending or lifting, pain, headaches and dizziness interfere with Plaintiff's balance, Plaintiff is moderately limited as to pushing, pulling, reaching, and twisting of the cervical spine, mildly to moderately limited with regard to fine motor activity with the hand, and Plaintiff should avoid irritants or other factors that can precipitate asthma.  AR at 428.  The ALJ gave Dr. Toor's opinion some weight, observing Dr. Toor did not indicate the source of the determination that Plaintiff is moderately to markedly limited to bending and lifting, but otherwise finding Dr. Toor's opinion consistent with limitations expected to be posed by Plaintiff's subjective fibromyalgia symptoms.  *Id.* at 34-35.  Significantly, the ALJ's RFC assessment is largely consistent with Dr. Toor's opinion, especially that Plaintiff is only moderately limited with regard to standing, walking, and sitting, *i.e.*, the functional findings Plaintiff challenges here.  Moreover, the ALJ's

reliance on Dr. Toor's findings, AR at 34-35, was permitted insofar as the opinion is based on a physical examination and is consistent with other evidence in the record. *See Tankisi*, 521 Fed.Appx. at 32 ("A consultative examination is used to 'try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision' on the claim.") (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).

The ALJ thus did not improperly rely on her lay opinion in assessing Plaintiff's RFC, which is supported by substantial evidence in the record, and was not required to refer the matter back to Dr. Thompson for additional evidence.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: September 16, 2019
Buffalo, New York